Fine, we'll come on up and once you repeat that name so we can get it on the record. My name is Adams. Nobody says what when you say that. It's Dawn Weaver Hand. All right. Thank you. And so I'd like to talk about jurisdiction and standing first. Good morning, Your Honors, and may it please the Court. I'd like to talk about jurisdiction and standing first because there's always one first. I appreciate the letter that we received giving us a heads up about some questions that the panel has. So I'll talk about jurisdiction and standing, and then I'd like to touch upon a few highlights that distinguish this case from some others cited, mostly others cited in the briefs. And the most important of these highlights is that this case deals with private property, private homes, as opposed to the public parks, sidewalks, public streets, that are the subject of most of the prior restraint claims in the briefs. Turning to jurisdiction, while the plaintiff's prior restraint claims were found viable by Judge Lamel, whatever that means, there was no relief given to us, no declaratory judgment, no injunction. So I think it's clear that this panel has no jurisdiction over the prior restraint claims today. In your view, we would dismiss the cross appeal? Is that right? I think there's no jurisdiction today, Your Honor. And a case that you authored supports that. Cooper v. Brown, that was the case about the dog bite and some irresponsible police conduct. And in it, the court affirmed the qualified immunity ruling of the district court, but dismissed the pastoral summary judgment for the plaintiff, Cooper, for lack of jurisdiction. There's another case, Tetra Technologies. But your view is there's no jurisdiction as to which claim? As to the prior restraint. Prior restraint, all right. Today. And I think for the same reason, there's another case, Tetra Technologies v. Continental Insurance, which says essentially the same thing, that where relief is not granted, there is not a final claim despite a 54B certification. And then those same cases support the fact that there is jurisdiction over the Commerce Clause claim that we've appealed and the Fifth Amendment claim, takings claim that we've appealed, because the district court fully disposed of those claims. So I think there is jurisdiction over those claims. There's a wrinkle that might be relevant but isn't. In your Cooper decision, you cited Liberty Mutual v. Wetzel. And in that case, Judge Rehnquist pointed out Section 1292A1 provides jurisdiction when an injunction is granted or denied. And we were denied an injunction at the beginning of this case, but we didn't appeal the prior restraint ruling. And in Liberty Mutual v. Wetzel, Judge Rehnquist says it is the person, the party denied the injunction that has the right of appeal. So I think there's no jurisdiction over the prior restraint claim. Turning to standing. We received a question. Do the advertising restrictions in Section 26618 apply to all persons or only to owners of short-term rental licenses? There might appear to be a conflict between the article's statement and its preamble, 26613, that this article is intended to encompass all persons engaged in the business of short-term rentals. And short-term rental is very expansively defined as any use of a dwelling in return for money, commodities, services, anything, for a period of less than 30 consecutive days. That encompasses a dog sitter, a babysitter, somebody caring for the elderly. Anybody who occupies a dwelling is defined as a guest under this statute if they're there for less than 30 consecutive days. So the preamble says it's intended to apply to all persons. And then 618 says it applies to permit holders. There's some decisions that help here. There's the canon of, I'm sorry to assault your ears with my bad Latin, but expressio unius, meaning that expressing one item excludes the others. And then there's another canon about the more specific governs the more general. In a recent case called NLRB v. SW, a Supreme Court case in 2017, Justice Roberts explained that the force of any negative implication depends on context. And the expressio unius canon applies only when circumstances support a sensible inference that the term left out must have been meant to be excluded. Now this same statute defines owner as anyone who owns 50 percent of a dwelling, but operator as one who holds an operator license. So I think that's for owners, the more general. There are no circumstances that support a sensible inference that the city meant to apply 26, 618, and its prohibitions only to license holders when in fact it is applying its penalty provisions against all property owners. It's been helpful for you to address jurisdiction standing up front. I thought it might be time for you to go ahead and move to the merits while you still have time to discuss those. Okay. All right. I did want to talk about one other case called Marks v. General Revenue. It's an FDCPA case, and it again talks about the, it's a, okay. So with respect to the merits of the Commerce Clause claim, I think that, and I won't talk about the prior restraint claim because I think there's no jurisdiction over it unless you'd like me to discuss those precedents, and I can. The Commerce Clause claim, which is my favorite, under the Adjournment Commerce Clause, it is prohibited to discriminate against out-of-state economic actors. This statute clearly does that by prohibiting anybody who doesn't have a homestead exemption from having guests, as this statute defines them, to their homes. Judge Lamel found that that was only an incidental restriction on interstate commerce. I think it's an absolute restriction on interstate commerce, and I think that it's not justified by the CPC study that the city relies on because that study doesn't support the purposes that are outlined in the preamble to the statute. As I understand it, but correct me if I'm wrong, procedurally, so there was a summary judgment on that. Yes. If we were to agree with you on that, I'm not suggesting we will or we won't, but if we were, that would just be reversing the summary judgment, but that claim would still be open to further development in the district court. Isn't that right? I'm not quite sure how to answer that because the city has agreed that there are no material facts in dispute with respect to the claim. I think we brought a facial challenge, and we were entitled to bring a facial challenge. The cases support that. Presumably it would be remanded unless you'd like to ruin our favor. With respect to the Fifth Amendment claim, I think the Supreme Court's precedents and this Court's precedents are clear that a license holder has a property interest in a license. But this is an interest in the renewal of the license. I'm not aware of case law that tells us that there's a property interest in the renewal of a license, particularly since the code calls it a privilege. The Supreme Court says that license holders in the Bell case, license holders have a right, a property right in their licenses, and I think that case was a renewal case. Maybe it was a revocation case. But it says they have a property right, whether it's called a right or a privilege. I think the city saying something doesn't make it so. But a number of Ms. Hignell, for instance, her license was revoked. It wasn't only not renewed. And I can point out a few important points about the ordinance itself, which appears at tab 7. The ordinance does not, now this again refers to the prior restraint claim, but the ordinance doesn't provide any amount of time in which the administration must decide on a license. And that's impermissible under the Supreme Court's precedents. It says that if a license applicant asks for the reasons why the license was denied, those reasons must be transmitted, but there is no time within which they must be transmitted. And that's impermissible. Are there any questions? Is that all you have? Well, since I have a few minutes. You don't have to use all your time. I'm sorry? I'm just saying you don't have to use all your time. No, I don't. And sometimes it's better to be brief. You've saved time for rebuttal also. Yes, I have. I have. I'll point out one more case, touching on the questions that you asked. And having spent my entire career as a consumer lawyer, this is not a case I enjoy citing to you, but it's Marks v. General Revenue. It's a Supreme Court case, and it talks about the expressio oneus canon, and it says it can be overcome by contrary indications that no exclusion was intended. It also says we have long held that the expressio oneus canon does not apply unless it's fair to suppose that Congress or the legislative body considered the unnamed possibility and meant to say no to it. So that's important. That was a case, that was an FDCPA case that had to do with fee shifting with respect to a prevailing defendant where the plaintiff had not sued in bad faith. So I see that I have a few minutes left, but unless there are any questions, I'll wrap up. All right. You can speak on rebuttal. Thank you.  Mr. Court, Daniel Smith on behalf of the city of New Orleans. If I may, I would like to start, of course, with the jurisdictional issues and the standing questions. I'd like to go straight to Judge Smith's question about if there's no jurisdiction on the prior restraint claim, whether this court should dismiss it in the first instance. And we're talking about just dismissing the appeal. Yes, thank you, Your Honor. Dismissing the appeal. As Ms. Wheelahan said, although it was the intent of the parties in the district court to certify that for appeal to be heard because the other issues were coming up as well, it does not appear that there was relief given in the opinion that was issued by the district court. That said, however, this court also very aptly brought up the question of standing. And there's precedent that says that even if there is not the statutory basis for the appellate court to review a claim under 1291 as a final decision, or 1292 as an interlocutory appeal, there are instances where the appellate court would still have jurisdiction to hear that claim. And those instances are precisely where questions of standing have arisen. I'll cite directly to the International Association of Mechanists and Aerospace Workers Local Lodge against the Goodrich Corporation. This court said exactly that. If a federal court, if the lower court, the district court, was of jurisdiction and there's no standing, then even without section 1291 or 1292 jurisdiction, we would still have appellate jurisdiction if the district court wholly lacked jurisdiction so that its order was a complete nullity. Essentially, whereas generally speaking, this appellate court would review the merits of that order, if there's no standing, that order never should have existed in the first place. And this court can review with respect to standing whether that order should have been issued at all. And, of course, the city's position is that opinion and the language that this court has used in the past is it's a complete nullity. To put it in very plain English, plaintiffs did not have standing to bring their prior restraint claim, either under the Article III theory that I think this court identified with respect to the ordinance or under the broad discretion theory that the district court found in its opinion. Plaintiffs didn't have standing to bring either of those claims. Therefore, the federal court never should have issued an opinion on it, and it is a complete nullity. To the city, not only do we not believe that this appeal should be dismissed, the city believes that the district court's order should be vacated as a nullity. And I can get into that more if you like. I will say the International Association case cited a case, Shepard v. International Paper Company, which is a Fifth Circuit case from 2004 where it found the same result in a different context. And I may submit, Judge Smith, you were on that panel back in 2004. As far as standing goes, first I'll address the standing identified by this ordinance order, but I think it's also important to talk about the standing, why there was no standing for the district court to issue its opinion at all. This court was very interested in the language of these ordinance, the city's ordinance, as to whether or not it touches on conduct for non-permit holders. Now, the vast majority of the ordinance does, of course, deal with folks who have short-term rental licenses. It deals with eligibility. The specific section cited by this court, 26-618, discusses, for the most part, the obligations and the duties of someone who has a permit holder. So, of course, having insurance requirements would be something that only would apply to someone who has a permit and is operating short-term rental. However, the city has to concede that the part of the ordinance that makes it impermissible to operate or advertise a short-term rental without a license, and that applies to everyone, of course. However, the city still maintains the plaintiff does not have standing to bring its prior restraint claim. That is because they do not meet the injury and facts standard of Lujan. And I do believe that's what the court was getting at when it asked those questions. Now, there are cases from the Fifth Circuit and also from, I think, an interesting case from the Sixth Circuit that identifies that, excuse me, pardon me, let me back up a bit. There's a recent case from this circuit, the Fifth Circuit, the Doe 1 v. Landry case, a very interesting case about exotic dancers, and this court found that there was no standing because some of those dancers had aged out. There's another case from the Sixth Circuit, which is a Phillips v. DeWine case, which is about lethal injections, and in that case they found that there was no standing because the prior restraint claim had not identified protected expression. They did it looking at those plaintiffs individually, not as a facial challenge, but as an as-applied challenge. The city's, to put it succinctly, the plaintiffs do not have standing to bring their prior restraint claim as applied because they have not identified, under Lujan, an injury in fact, which requires identifying the legally protected interest that is being injured. The city's maintained all along in this litigation, with respect to its speech claims, the plaintiff has never been able to identify what constitutionally protected speech or constitutionally protected expressive conduct or activity is being curtailed by this ordinance. And that's required, not just in stating a claim, that is required for them to have standing under Lujan. I'll also cite the Susan B. Anthony, it's a 2014 Supreme Court case that says, to find a protected interest or to find protected speech in a situation where there hasn't been enforcement yet, we're talking about a pre-enforcement, prior restraint situation, with respect to a load of injury, you have to identify and have an intent to engage in a constitutionally protected activity. So, we've encouraged plaintiffs through our briefing to identify what those are. In their original briefing, they cited that it would be the ability to operate a short-term rental without a license at all, well under the ordinance that's illegal conduct, and it would be advertising a legal transaction, which is not protected speech under central Hudson. They've also identified being able to, if they had a permit and they were only allowed to have five bedrooms or ten guests, much like a hotel or bed and breakfast, but limits on the size of your party, that it would be prior restraint for them not to be able to advertise the extra bedroom. That's not constitutionally protected speech. In further briefing, the plaintiffs have identified other purported speech activities or speech interests, such as being able to describe their homes in beautiful terms. And I believe that these homes are quite beautiful, but that's marketing, Your Honors. Also, the ability to engage in in-kind transactions, to trade a guest room here for a guest room there, that's monetary, that's pecuniary. To be able to have a charity auction, well again, that can be reduced to monetary value. So, the reason that the city feels there's no Article III standing in this case for the prior restraint claim is that, again, there's no constitutionally protected interest under Lujan. That has to be identified in the standing stage. I will turn, if there's no questions, to why the district court itself, why that opinion should be vacated, because under its theory itself, there's no standing. It's interesting that the district court wasn't pled by plaintiffs, but they found their own theory as to why there would be a prior restraint issue. And that was this question of whether the permittee, the city, has overly broad discretion in granting those permits. There's a bit of confusion because generally those are brought as a facial claim, and it seemed that the district court was looking for a question of fact. But putting that aside, the city's identified at least five different Supreme Court cases about broad discretion and prior restraint and standing. Again, we're not talking about the merits. This is whether or not there's standing for this type of claim, and it requires that there is unbridled discretion on the permit holder, which is ironic because the district court identified in 26.617 all the requirements for getting a permit, all these objective requirements, having insurance, having an escape plan, having fire extinguishers, etc. And then said, well, it's possible that there was a protected speech interest. We couldn't find it, but we should try it, presumably. And with no disrespect, of course, to Judge Lamel. So the court on its own didn't identify, but speculated there could be a speech interest, so the plaintiff's claim would be viable. But in terms of standing, that's not with these other cases. Even the cases that were cited by the district court, that's not what they state. In order to have standing for a discretionary permittee prior restraint claim, the permittee must have unbridled discretion, no restraints. It has to permit or deny expressive activity, and I won't go back to it, but we've already identified why there has been no expressive activity identified in this case. And some of these cases actually state that there can't even be an acceptable, any acceptable application of the statute at all, again, speaking to its facial nature. So City of Lakewood, which is the case cited by the district court, and also Freedman v. State of Maryland, state that one has standing to challenge a statute on the ground that delegates broad licensing decisions in the area of freedom of expression. When a licensing statute vests unbridled discretion in a government official over whether the permitters deny expressive activity, then one may challenge it facially. The other cases are Ward v. Rockings Racism, Forsyth County, and members of the City Council of Los Angeles v. Taxpayers v. Vincent. There are also Fifth Circuit cases that identified those elements for bringing a broad discretion claim as well. That would be SEIU v. City of Houston, which Your Honor authored, whether the challenge regulation authorizes suppression of speech in advance of its discretion and has broad discretion. The other case would be Moore v. Brown. Your Honor was on the panel. Fifth Circuit 2017 case, broader unbridled discretion is granted, effectively authorizing suppression of speech prior to its expression. I feel like I'm belaboring this point a bit, but I think it's important because it shows not only that plaintiffs do not have expressive speech or conduct in this case, but that this court does have jurisdiction because there was no, there was no, they have not been able to have standing for prior restraint. So both plaintiffs' claim is not viable, and also the district court's opinion should be vacated as a complete nullity. This is language coming from the courts. If I may, I'd like to speak about the remedy that the city is seeking from this court. Now it's clear the plaintiff has the burden of the one evoking jurisdiction. The plaintiff has the burden of proof to show that jurisdiction. What's interesting under the Lujan case is that it states that the burden for showing standing evolves as the case moves along, depending on which stage of litigation it's in. Many cases on standing deal with injunctions, and in that posture, there's a relatively low bar for showing standing. However, in this case, which has been litigated for two and a half years, we were in a motion for judgment stage, a pretrial stage. It was a trial set that has, of course, been extended. So the city maintains that plaintiffs, in order to show standing at this stage in litigation before this court, would have to meet a summary judgment for standard such that there would be no genuine issue of material fact as to whether or not plaintiffs have standing. And again, of course, the city maintains that they have not met that element of even pleading, much less presenting evidence that they were engaged in expressive conduct or protected speech activity. Again, of course, these courts know that the court in a motion for summary judgment stage may not assume in the absence of such evidence that plaintiff at trial could prove any of those elements for that claim. Thank you. Unless any of the members of this court have questions about those elements, I can touch on the other two claims which were properly appealed and which the city, of course, would like to see maintained and affirmed by this court. Tell us about dormant commerce clause. Thank you very much, Your Honor. So generally speaking, ordinances can regulate activity differentially, provided that there's a valid factor for that regulation that's unrelated to protection. That comes from Wyoming v. Oklahoma. It's a Supreme Court case in 1992. This case that was- Narrowly tailored to advance a legitimate local interest. Thank you, Your Honor. Under Pike v. Bruce Church, that's correct. The test that was identified by the district court is that if it effectuates a legitimate local interest, it does not violate the dormant commerce clause unless the burden is clearly excessive in relation to that benefit. So speaking of the narrowly tailored- First, you do agree that this discriminates against out-of-state interests. Your Honor, this- It treats out-of-state owners differently. Respectfully, the city argued, and the district court didn't buy it, but the Rosenblatt v. Santa Monica case that dealt with short-term rentals in Santa Monica, it did not get to the balancing test because it found there wasn't- the differential treatment wasn't between whether someone lived out-of-state or not. The differential treatment was whether or not the dwelling itself had an owner in it or some other person. So we maintain that the distinction here is there's no difference between whether they live across the country or across the street. So we sort of reserve that argument, but that's- It's not just that the owner lives in it. It has to be the homestead. That makes it Louisiana. So you're really not talking about maybe somebody from out-of-state is living in there. You have to declare your homestead as being in this location. I mean, I understand you're an advocate for one side, but isn't that discriminating against anybody who lives in another state? Or another parish, for that matter. Your Honor, the homestead exemption requirement, and that's a great point, frankly, was an administrative requirement. Instead of the city having to check whether or not there was an owner there, they used- and I would say validly, they used the assessor, the parish tax assessor, to make the determination for them. But let's put that aside. Let's start with this discrimination. Okay. Where do you go from there? It may validly draw distinctions as long as they're not protectionistic, as long as the local interest is legitimate, and their balancing is just not clearly excessive in relation to that local benefit. So the local benefit in the City Planning Commission study- the City Planning Commission of the City of New Orleans held four or five hearings. The City Council held four hearings. They examined over and over if there was a problem that needed to be addressed. That problem was unsupervised, whole-home, short-term rentals that were becoming every weekend bachelor parties, bachelorette parties, etc. And the way that the City Council came upon, with the recommendation of the Planning Commission, to remedy that is to have someone who owns the house actually live in the house. And again, we say house. It can be a fourplex. You can have three short-term rentals on your single- as long as you have four dwellings that you own together. That was the remedy they came up with. Now, it's not clearly excessive in the burden because all that's been identified by plaintiffs- and we'll say there's a single plaintiff, but surely there are others out there- all that's been identified is that they aren't able to short-term rent. Now, that's not destroying their business. What that means is that their rental property has to be rented month by month instead of weekend by weekend. That's the burden we're discussing on someone who would live not just out of state, Your Honor, but also maybe in Jefferson Parish or, again, even across the street, which would be unlikely. So we think that the balancing test, it's a legitimate local interest, and I'll also make sure this Court remembers that in a different context of due process, the District Court found that there was a legitimate local interest when trying to do a rational basis review, and that was not appealed by plaintiffs. So the record is extensive that in order to deal with these nuisance by and large complaints, that the city wanted to have someone who owned the property to be nearby. And if you also examine the record, I'll tell you what you will not find, which is someone saying, well, we only want these short-term rentals to be owned by people who live in New Orleans or Louisiana because there was no protectionist interest. Pike Church itself, of course, was a case about cantaloupes, and before you could sell them out of state, you had to build a $200,000 storage facility to make sure that the cantaloupes were of the quality that the State of Arizona wanted when marketing them in other states. You're not going to find that kind of state-by-state or parish-by-parish distinction in the economic activity here. The City of New Orleans was dealing with an extremely well-identified, well-publicized problem and a very long public engagement process with members of the public and its professional body. It's required by law, by the Conference of Zoning Ordinance and the Charter, to have the Planning Commission examine this as professionals, and this is what they came up with. So we do believe the interest was legitimate. It was tailored to the problem. There's no protectionist interest. Even if there is possibly a differential treatment, even if there is discrimination, Your Honor, it is not excessive, it is not out of proportion to the very legitimate local interest. I'm seeing I have only a couple minutes left, so I'm happy to discuss takings if you're interested, but we can stay on this topic if you'd like. It's up to you. Oh, well, thank you, Your Honor. You have questions, and right now there aren't any. Affordable housing wasn't the main reason for this ordinance, but there are blocks in the Treme and in the Bywater where there was a short-term rental on every block. Of course, that's going to affect the rental market. I will move to the takings claim very briefly. The main thing I want to rebut is that the case, the Bowlby case, identified by plaintiffs as saying that there's a property interest in a business license, that case does say that, but only in terms of due process. So if you have a business license that's being revoked by the authority, then, yes, you are entitled to have a hearing and an opportunity to be heard before it's taken away. The city provides for that in the ordinance. In fact, it was due process in enacting the ordinance in the first place. It was due process if you can't get your permit. It was due process if you have a permit and it gets taken away, all of which can be appealed to state court. The other case, there was some discussion in the briefs, anyway, about whether regulating zoning and housing is an intense enough activity that would allow the city to not have, and allow there not to be a protected interest in their permit itself. Those cases are Fourth Amendment cases. So, really, the case on point is the Fifth Circuit case, Dennis v. Melancon, that deals with a cab license. The factors are all very similar. It was a privilege, not a right. It was not a permanent license. And I think this court very aptly noted that a revocation is different than a renewal. It expired on its own terms, and so did my time. I really appreciate it. Thank you very much. All right, thank you, Mr. Chairman. Let's take some time for a vote. Just a few points. With respect to the Article III argument that my colleague made, there are affidavits in the record showing that each of the plaintiffs was penalized thousands of dollars under this statute. So I think our Article III standing is clear. All of them were damaged monetarily. With respect to the standing to bring a facial challenge, the city of Lakewood v. Plaindealer plainly says that the right to bring a facial challenge is there where there's a city licensing program that grants unbridled discretion to the city. And the city's Ordinance 625, I think it is, grants the city unbridled discretion. In the city of Littleton, the ZJ Gifts, it lists eight specific circumstances which were required for the city to deny a license. In our ordinance here, it can deny it for any reason that it wants to. There are no requirements. There are no standards in the ordinance by which the administrator must abide in order to deny a license. It says at the discretion of the department. There's no time limit within which they must decide whether to grant or deny a license. And if they deny it, there's no time limit within which they must transmit reasons why it has been denied. Now once the reasons are transmitted, there's a time limit within which, or rather once a case is docketed, there's a time limit under the Administrative Procedures Act of the city within which it must be heard. But there's no time limit within which it must be docketed. So I think under city of Littleton and under Friedman v. Maryland, these provisions support the unbroadened discretion, another case, FW-PBS v. Dallas. Those cases support our standing to bring a prior restraint claim, although we maintain that there's no jurisdiction in this court for the appeal of that claim because the district court didn't dispose of it. This is not a zoning case. With respect to the Commerce Clause, houses right next to each other can be treated differently with respect to exactly the same use. So it's not a zoning case. And I think that the restraint on commerce is not incidental. It's absolute. And I think that the study the city relies on does not support the purposes stated in the ordinance for its enactment. So I think that's all I have. All right, thank you. I have two minutes left, so I'm reminded of the only time I ever argued to a state appeals court when I was the last argument of a very long morning. And by the time I walked out, the judges had their chins in their hands, and I said, I guess I'm the only thing standing between you and lunch, so I'll be brief. And they all smiled gratefully, and I won. Thank you very much. Thank you, Ms. Wheelan. Your case is under submission, and the panel is in recess under the usual order.